We'll move to our fourth case this morning. Thank you, Your Honor. And our fourth case this morning is Michael Juday v. FCA US LLC. All right, we have Ms. Martin on Zoom, and Mr. Sullivan is here. You may proceed. Thank you, Your Honor. May it please the Court. The District Court's grant of summary judgment in this case contains two major flaws. First, the District Court erred when it found that FCA did not deny Plaintiff his FMLA benefits to which he was entitled under his FMLA interference claim. And second, the District Court erred when it found that there was insufficient evidence for a jury to conclude that there was a causal connection between his taking of FMLA leave and ultimately being suspended for his retaliation claim. And as determined by the District Court, both of these flaws were premised on the idea that the defendant purportedly held an honest suspicion that Mr. Juday provided false and misleading information as it relates to his intermittent FMLA leave. However, at minimum here, there was a disputed material fact over whether or not FCA had an honest suspicion that Mr. Juday provided false and misleading information to FCA. In addition, the District Court's determination that FCA had an honest suspicion necessarily required it to make a credibility determination, which should have been left for a jury to decide. As to the honest suspicion standard, there are three reasons why FCA's purported suspicion was not enough to warrant summary judgment in this case. First, Mr. Juday appropriately utilized his intermittent FMLA leave pursuant to the restrictions placed by his position as approved by the defendant. Second, Mr. Juday's responses to the defendant during this investigation firmly negated any suspicion that Mr. Juday provided false and misleading information to the defendant concerning his intermittent FMLA leave. And third, FCA's ambiguous response to the reasons for Mr. Juday's suspension suggests that its reasons for the suspensions was actually dishonest. As to the first factor here, Mr. Juday utilized approximately 180.1 total hours of intermittent FMLA leave between January 4, 2017 to November 29, 2017 for his serious health conditions of anxiety, depression, and back pain. His intermittent FMLA leave was well within the 480 hours permitted by the FMLA. And for her sake, Becky Juday, his wife, she suffers from irritable bowel syndrome and also took intermittent FMLA leave during that time as well. And the defendant approved for Michael Juday each certification form completed by his physician. Thus, the defendant believed Michael Juday's request for FMLA leave to be reasonable per the restrictions provided by his doctor. Second, Mr. Juday's responses to the defendant during this investigation negated any suspicion that Mr. Juday provided false or misleading information. Is it your position, Mr. Sullivan, that the employer was required to believe everything that Mr. Juday told them? Yes, Your Honor, because of the information that was provided to them, and I'm about to get into that right now, Your Honor. FCA's notes when they conducted a subsequent investigation with Mr. Juday and Becky Juday suggests that they do not have any indication of them providing false or misleading information to the company. Among other answers, Mr. Juday stated that his and Becky Juday's flare-ups were random and unpredictable, that Becky Juday's serious health condition can cause Mr. Juday's stress, which causes his condition to flare up, and that the defendant would need to ask Becky Juday regarding her FMLA use and vice versa, as each of them would know more about their own respective condition. Mr. Juday also stated that he only used intermittent FMLA leave when he experienced symptoms or flare-ups of his serious health condition. The fact that some days intertwine with Becky Juday's use of intermittent FMLA leave does not suggest that he was abusing his use of FMLA leave? No. I certainly would raise an eyebrow, I would think. He has an explanation. She has an explanation. As I recall, both were pretty defensive and noncommunicative when asked about the coincidence of the use of the FMLA. So, I have trouble understanding why the employer is required to take them at their word. Certainly, Your Honor. So, in their responses, Mr. Juday stated to them that, one, his condition was random and unpredictable, two, that his condition is caused by her condition flare-ups 20 to 30 percent of the time. Now, for Becky Juday's… They actually overlapped about half the time that year, right? Correct. And for Becky Juday's case, she also testified or stated that sometimes her condition also flares up because of Mr. Juday's condition, because she, according to her words, cares about her. Mr. Sullivan, do you agree that an employer's honest belief that an employee has abused FMLA leave is a sufficient defense to both interference and retaliation claims? Yes, Your Honor. But in this case, Your Honor, there was not an honest suspicion. Or at the very least, there was a dispute of material fact or whether or not the defendant had an honest suspicion. A jury could determine that FCA did not have an honest suspicion, but instead predetermined that Mr. Juday's… Or that the Juday's would be disciplined. Despite Mr. Juday's answers providing otherwise, FCA's investigation did not account for the fact that Mr. Juday's condition occurred randomly and completely independent of his wife's condition at times, nor did the defendant take into account that the flare-ups of Becky Juday's condition can sometimes be caused by the flare-ups of the plaintiff's condition in this case. The combination of both would likely create some additional overlap given the total amount of occasions that Mr. Juday utilized intermittent FMLA leave. So, am I correct that this whole case is about the 30-day suspension? Correct. Okay. And as mentioned in the appellate brief, unlike the court in the Vail v. Raybesto's production company case, the defendant's subsequent investigation here did not prove or support either plaintiff or Becky Juday providing false or misleading information to the company, nor did it support that they abused their intermittent FMLA leave. Now, as to the third factor here, FCA's ambiguous response to the reasons for Mr. Juday's suspension suggests that its reason for the suspension was actually dishonest. In particular, when asked to provide for all the reasons why Mr. Juday's employment was suspended in its interrogatory number 5, FCA provided the following response. Defendant received notification from his third-party FMLA administrator that plaintiff and his wife, Becky Juday, who was also employed by defendant at the same point, took FMLA leave on the same days multiple times in 2017. Thereafter, defendant conducted an investigation and concluded that plaintiff violated standard of conduct number 1, providing false or misleading information to the company relating to his FMLA leave. As a result, plaintiff was issued a 30-day suspension. Nowhere in the interrogatory response did they indicate any of the specific facts, scenarios that they addressed in their motion for summary judgment. In addition, when Mr. Juday requested more information for why they believe they provided false or misleading information to the company, they had no response to him. This ambiguous reason suggests to a reasonable jury that their purported honest suspicion was indeed dishonest. In addition, these scenarios highlight the fact that the defendant's investigation was incomplete and did not take all the possible scenarios into consideration that I previously went through. There was sufficient evidence here to allow a jury to conclude that Mr. Juday was denied his FMLA benefits when FCA used his taking of FMLA leave as a negative factor in its employment action by suspending his employment and thereby discouraging him from using such leave in the future. In addition, there was sufficient evidence to allow a jury to conclude that the defendant did not have an honest suspicion that Mr. Juday abused his intermittent FMLA leave. As such, summary judgment on Mr. Juday's FMLA interference claim was improper, and as far as the FMLA interference claim is concerned, this case should be remanded back to district court and this decision should be reversed for a jury trial. Now, as to the FMLA retaliation claim, summary judgment again was improper on Mr. Juday's FMLA retaliation claim for similar reasons. Mr. Juday again testified that or stated that he utilized his intermittent FMLA leave pursuant to the restrictions provided by his doctor. He stated in the interview that his wife's condition triggered his condition 20 to 30 percent of the time, and the district court failed to consider that there are times when his condition would flare up randomly, and once the 20 to 30 percent is also taken into account with the random and unpredictable nature of the conditions, a reasonable juror could conclude that Mr. Juday provided a reasonable and accurate estimate, made no false or misleading statements to FCA, and that FCA suspended him without any independent basis other than the fact that he was lawfully utilizing his intermittent FMLA leave. And without Mr. Juday utilizing intermittent FMLA leave throughout 2017, he would not have been suspended. Other than the overlap of FMLA days, nothing has been identified as false or misleading here, or throughout this case. And the simple overlap alone should not be able to form a basis for disciplining an employee for abusing FMLA leave, especially when both individuals use the FMLA leave pursuant to the statutory amounts that are provided on the FMLA, and as they are certified by their physicians. If employers could simply point to the overlap of two individuals' use of FMLA leave to support the disciplinary action, it would undermine the statutory protections provided by the FMLA. Well, these are not two random individuals. Your statement's a little overbroad, is the bottom line. Okay. Let me, so before, so these are two individuals that obviously know each other, but this is for a company. It goes a little beyond that, doesn't it? A company that's of the size of FCA. Would you tell us the relationship, for the record? Yeah, they're married, for the record. That's not so hard to say. But the company of the size of FCA is bound to have overlap amongst other employees there, especially more employees that they have compared to a small employee. And as such, I'm going to reserve the remaining time for rebuttal. That's okay with the honors, unless you have any other remaining questions. That's fine. Thank you. Ms. Martin, you may proceed when you're ready. Thank you, Your Honors. Let me proceed. May it please the court. The crux of Mr. Joudet's appeal is truly his challenge of this circuit's well-settled, honest suspicion, jurisprudence in the context of the FMLA. Here, we believe that the district court correctly identified that honest suspicion had been demonstrated by FCA in such a way that it defeats his interference and retaliation claims in this case. And we request affirmance of the lower court's judgment here. Looking first at the interference claim, it's an undisputed fact that as far as the specific benefits under the FMLA, that Mr. Joudet was never denied any FMLA leave when he properly requested it. And as counsel has stated, his argument, therefore, must be and is that the suspension of his employment for FMLA abuse discouraged him from utilizing FMLA leave and thus interfered with his rights in that manner. Such an argument, however, is manifestly incorrect. The district court found, based on the evidence, that FCA did not use Mr. Joudet's simple taking of FMLA leave as a negative factor when it suspended him. It was the abuse of leave. The district court also found that FCA had demonstrated its honest suspicion that Mr. Joudet was abusing his FMLA leave by undisputed evidence. It's important to look at the makeup of that honest suspicion, first being that it was FCA's third-party vendor, Sedgwick, that brought the issue to their attention. It was not FCA looking for a reason to punish Mr. Joudet. And it did what any employer should do, which is look into those concerns that had been raised. And they put the person in the job to do it, Ms. Stebbins, who was familiar with FMLA leave as taken by hourly employees. And Ms. Stebbins did not know Mr. Joudet personally. It's important, I think, in demonstrating this honest suspicion on FCA's part that Mr. Joudet was given FMLA leave in the past, as counsel has stated earlier. And he admitted, of course, his deposition to receiving leave whenever he submitted a proper certification for that leave. Ms. Stebbins then did her own review of the leave records and was concerned with the extraordinary amount of same-date absences, as well as same-date-and-time absences between Mr. Joudet and his wife. When Mr. Boyer of the plant HR team interviewed Mr. Joudet, it was to see if the information that he could provide allayed any of those concerns. Mr. Boyer asked the questions. Ms. Stebbins evaluated the information. Mr. Joudet cannot draw any inference from the fact that Mr. Boyer's notes did not say that he or his wife provided false or misleading information. But what Ms. Stebbins learned was that Mr. Joudet had estimated that only 20 to 30 percent of his absences were caused by his wife's condition. But when she looked at the records, she found that almost half of his 2017 FMLA tardies were on the same dates as his wife's absence or tardy, and more than half of his 2017 FMLA absences were on the same dates as his wife's absence or tardy. And Ms. Stebbins made the call. She determined that there had been FMLA abuse here. Mr. Joudet being. Yes. Can I ask you a question about the legal standard here? As I understand it, there is. Well, let me ask the question this way. You and the district court have taken the position and plaintiff agrees that if there was an honest suspicion here, that's a defense for these claims. And I guess my question is a broader one. Is that always the case with FMLA claims under for interference or denial or retaliation? And what I have in mind, for example, suppose an employer denies leave based on record keeping mistakes in H.R. It's an honest mistake, but they just they make a mistake and say, no, you've already exhausted your leave, so you can't have any more. Turns out they were wrong by a week. You spin out the hypotheticals. Is is the is an honest mistake a defense for such a denial claim? That would seem, Judge, to be different than what we're looking at here. The honest suspicion cases that I have seen seem to be targeted specifically to this idea of FMLA abuse in the. That's consistent with my reading as well. So I'm but I'm not sure that they've been that the thought has been explicitly confined that way. Thanks. But it's our view that Mr. Junaid gains no ground by arguing that if the data is viewed a different way, that the jury could see it his way. And thus, he should avoid summary judgment. There's nothing wrong with Miss Stebbins looking at his record of absenteeism globally rather than highlighting a specific date that she believed he abused FMLA leave. It's important to note that under this honest suspicion jurisprudence, an employer is not required to prove misconduct beyond a reasonable doubt. And indeed, this court's precedent in the Karyotis versus Navistar case emphasizes that a plaintiff cannot simply criticize the employer's valuation process or simply question its conclusion about the quality of an employee's performance. Here, Mr. Junaid's task was to identify facts that would demonstrate that Miss Stebbins did not honestly believe that he abused his FMLA leave and he simply has not done that. In Karyotis, the plaintiff argued that the company was careless and not checking the facts before firing her, and the court said that even if that is true, she still could not prevail. And in the Scruggs versus Carrier case, the circuit looked at something similar, also related to an interference claim where Carrier, the employer, thought Mr. Scruggs was misusing his leave based on prior absenteeism, again, similar to here. And they did an investigation the next time he asked for leave. Mr. Scruggs, as does Mr. Junaid, took issue with the investigation, but the court said, even if Mr. Scruggs felt that they should have conducted a more thorough investigation, they were not required to do so. Here, we're looking at Miss Stebbins' honest determination and Mr. Junaid has simply presented no evidence otherwise. He raises the basis for termination and Mr. Junaid was suspended and he was informed that it was for a standard of conduct number one violation, which was defined as providing false or misleading information to the company. No inference can be drawn that this was any kind of dubious or shifting reason. Certainly, representing that you are taking FMLA leave when you're actually taking leave for another reason would fall into the category of false or misleading information, similar to the Carrier Plant Rule 10 in the Scruggs case. And very telling, even if taking all of the facts and law into account, after his suspension, Mr. Junaid continued to request and receive FMLA leave, thus debunking the idea that he was discouraged from using FMLA leave. Certainly, for his retaliation claim, our arguments under the honest suspicion doctrine continue to apply with equal force. And the Scruggs case, as far as the retaliation claim, also provides a helpful comparison. In that case, the court looked at some specific timing that was relevant there. Several weeks after Mr. Scruggs had requested leave, his employer received a report from its investigator that he had misused leave. And it was at that point that Carrier began to take steps to terminate Mr. Scruggs. And again, as here, it was not because he took leave, but because of the suspicion of FMLA abuse. Indeed, if we found Mr. Junaid's facts sufficient to avoid summary judgment on his FMLA claims, FCA could raise the same concern articulated by this circuit in the Scruggs case, which is virtually any FMLA plaintiff fired for misusing his leave would be able to state a claim for retaliation. It's undisputed here that it's not the leave, but it's the honest suspicion of abuse that caused the suspension. Mr. Junaid's insistence that he didn't abuse FMLA leave is not the issue, as is clear by the cases. The district court correctly found that FCA provided undisputed evidence of its honest suspicion that Mr. Junaid was abusing his leave. And it was this finding that caused his suspension, not any FMLA animus or interference. FCA respectfully requests that this court affirm the district court's summary judgment in its favor in full. Thank you. Thank you, Your Honor. Mr. Sullivan. Very briefly, Your Honor, Mr. Junaid claims that the 20 to 30 percent, the ambiguity, and also the difference between the independent use of the FMLA leave and Ms. Junaid's FMLA leave warrants reversal of the district court's decision and remand for a jury trial. Thank you very much. Our thanks to both counsel. The case is taken under advisement.